WILLIAM READ AND OTHERS, COMPL'TS. AND JOHN I. DEWS AND
OTHERS, DEF'TS.

## In Equity.    Bill for Injunction.

Injunction granted to restrain the Sheriff from paying over money made on sale of an estate, un·
der executions issued by individual creditors thereof, where such injunction was prayed for
by bill in the Superior Court, alleging that complainants had filed a bill in the Circuit Court
of the United States, for the District of Georgia, claiming a specific *lien* on said estate, and
preference over individual creditors, which claim was still pending and undetermined.

### By LAW, Judge.

THE complainants allege by their bill, that they are entitled to a
proportion of property, or in lieu thereof, a sum in money, un-
der a deed which they allege to be a conveyance in trust from
the Hon. *James Read* to the late Gen. *Jacob Read*: that to
establish and recover this claim, they have filed their bill of
complaint in the Circuit Court of the United States for the dis-
trict of Georgia, which is now pending and undetermined: that
by the said bill they claim to be preferred to the individual cre·
ditors of Gen. *Jacob Read,* because, they say they have a *lien*
upon the specific property which passed into his hands, under
the said trust deed, by virtue of said deed; and that they are
also entitled to a preference under the Act of Georgia, passed
in 1799, entitled an Act for the better protection and security of
orphans and their estates.    It also appears that the defendant
*John I. Dews*, the Sheriff of Chatham County, by virtue of sun-
dry executions, issued upon judgments against the estate of said
Gen. *Jacob Read*, in favor of the other defendants, has levied
upon all the negroes of the estate, and advertised them for sale.
It is alleged, that, unless by the interference of this Court the
sale is arrested, or the monies arising therefrom sufficient to sa-
tisfy the claim of complainants be stopped in the hands of the
Sheriff, the complainants will be defeated in their rights.

[Read, et. al. vs. Dews, et. al.]

It has been decided by the Supreme Court of the United States, that a Circuit Court of the United States, could not enjoin proceedings of a State Court. It results, that unless this Court interferes in a case like that which is presented by this bill, there may be a failure of justice. Before the complainants can establish their rights in the tribunal, in which they have elected to prosecute them, the means of responding to their claim will have passed away from the estate of Gen. *Read*, and it be totally defeated. It is not now that a positive opinion is to be formed upon the merits of the claim exhibited by this bill. It is not by an indirect adjudication of their title that the complainants are to be put in a situation, which will defeat probable rights that may hereafter be established by a competent tribunal, before whom they are proceeding. It has been decided in the Supreme Court of the U. States, that it is enough on an application for injunction to shew a colorable title—or as one of the Judges expresses it, " the bill should set forth a case of probable right, and a probable danger that the right would be defeated, without this special interposition." This is not the case of a creditor at large ; (remarked upon at the bar,) if it were, I would at once refuse the application. But the distinction is founded on the fact, that the present complainants claim to be preferred to the creditors of Gen. *Read*, upon the ground of *lien*, under the trust deed, and the statute of Georgia already referred to. This is an obvious distinction exemplified by all the cases, and which forms in fact, the very basis of the present application. I am therefore of opinion, that this is a proper case for the interposition of this Court by the writ of injunction. The point has been raised as to the law of the State requiring security before injunction could be granted. I strongly incline to the opinion that this law is only applicable to a particular class of cases ; and that to give it a different construction, would impute absurdity to the Legislature, since there are many cases proper for injunction, in which there is no condemnation money, unless the mere costs of the application be so considered. The law however is gener-

al, and in the case of *Massie* and the *Bank of Georgia* which was not dis-similar to this, the late Judge *Davies* directed security in the amout of money stopped in the Sheriff's hands. I subsequently granted an injunction in that case, without security, but as I now recollect, the question was not raised or considered in the case. Until a construction can be put upon this law by the Judges in convention, which I shall endeavor to effect, I must require security to be given in the sum ordered to be retained by the Sheriff in a bond conditioned, according to law. Upon a compliance with which, it is *ordered* that a writ of injunction do issue to the defendant *John I. Dews*, enjoining and commanding him to retain in his hands, and not to pay over the sum of fifteen thousand five hundred and fifty-seven dollars and forty cents, monies arising from the sales ot the property of the said Gen. *Jacob Read*, now advertised by him under said executions, if there shall be so much money remaining in his hands, after payment of the costs and expenses of levy, advertising and other lawful expenses incidental to the said sales, and the same to retain till the further order of this Court.